CARL E. MOORADIAN, ESQ. Acting Corporation, Counsel, Niagara Falls
This is in response to your letters of November 14, 1975 and January 12, 1976 in which you request an informal opinion of the Attorney General concerning the application of military leave provisions, contained in Military Law § 242, with respect to "certain public employees of the City of Niagara Falls, including but not necessarily limited to policemen," who are members of Reserve Components and who attend "weekly drill sessions."
A variety of issues are raised by your correspondence with respect to city employees who work various shifts on a 24-hour schedule as well as those on a regular daytime schedule.
Subdivision 5 of section 242 of the Military Law provides as follows:
 "5. Pay for thirty days. Every public officer or employee shall be paid his salary or other compensation as such public officer or employee for any and all periods of absence while engaged in the performance of ordered military duty, and while going to and returning from such duty, not exceeding a total of thirty days in any one calendar year and not exceeding thirty days in any one continuous period of such absence."
Public officers and employees are defined in subdivision 1 of section 242 of the Military Law, which term includes within its definition public employees of the City of Niagara Falls. The term "ordered military duty" is defined in paragraph (b) of subdivision 1 of section 242 of the Military Law as follows:
 "(b) Ordered military duty. The term `ordered military duty', as used in this section, shall mean:
 "(1) Any military duty performed in the service of the state or of the United States, including but not limited to attendance at any service school or schools conducted by the armed forces of the United States, by a public officer or employee as a member of any force of the organized militia or of any reserve force or reserve component of the armed forces of the United States, pursuant to orders issued by competent state or federal authority, without the consent of such public officer or employee.
 "(2) Such duty, performed for a period or periods not exceeding a total of thirty days in any one calendar year, shall be deemed `ordered military duty' regardless of whether such orders are or may be issued with the consent of such public officer or employee, and regardless of whether such period or periods constitute part of a period or periods of military duty exceeding thirty days in any calendar year."
The provisions of 38 U.S.C. § 2024, provide specific guides for granting military leave with respect to active duty for training and inactive duty training performed by members of Reserve Components of the Armed Forces. This Federal statute formerly applied only to Federal and private employees. It was amended, effective December 3, 1974 to include those "in the employ of aState, or political subdivision thereof." (Emphasis added.) (Pub.L. 93-508, Title IV, Section 404[a], December 3, 1974,88 Stat. 1594.) Title 38 U.S.C. § 2024 states in pertinent part, as follows:
 "Rights of persons who enlist or are called to active duty; Reserves
* * *
 "(d) * * * shall upon request be granted a leave of absence by such person's employer for the period required to perform active duty for training or inactive duty training in the Armed Forces of the United States. * * * Such employees shall report for work at the beginning of the next regularly scheduled working period after expiration of the last calendar day necessary to travel from the place of training to the place of employment following such employee's release, or within a reasonable time thereafter if delayed return is due to factors beyond the employee's control."
It is clear from the foregoing that the covered employees are entitled to military leave only if their scheduled work period, including necessary travel time to and from the scheduled military training facility, conflicts in fact with the scheduled time for performance of the military training assembly.
We can find no provision of law mandating a leave of absence, with or without pay, for employees performing such training assemblies when there is no conflict of work time and training time as described above.
The effects of the foregoing upon an employee whose military duty terminates after a regular work shift has already commenced and the effects of the foregoing upon split-shift employees were raised in your inquiry. As expressed above, an actual conflict between work hours and ordered military duty must exist in order to make leave benefits under Section 242 of the Military Law available. Once such a conflict is established, 38 U.S.C. § 2024(d) states that "such employee shall report for work at the beginning of the next regularly schedule working period after expiration of the last calendar day necessary to travel from the place of training to the place of employment following such employee's release." (Emphasis supplied.) General Construction Law, Section 19, defines a calendar day as including "the time from midnight to midnight." It would appear therefore that the military leave benefits set forth in Military Law, § 242, would have to be provided on a calendar day basis and that benefiting employees would not have to report to work until the start of their regular shift following the conclusion of the calendar day during which they perform military duty.
Additional questions raised by your aforesaid correspondence include the following:
 1. "Does [a] weekend drill constitute a full 2 days or 48 hours of `ordered military duty'?"
 2. What is the effect of the limitation upon working hours set forth in Laws of 1911, Chapter 360, as last amended by Laws of 1970, Chapter 788 (Section 971, McKinney's Unconsolidated Laws), and Section 208-d of the General Municipal Law?
Weekend drills are described in various military publications. National Guard Bureau Pamphlet 350-1, entitled Training,Administrative Instructions, describes a "Unit Training Assembly" as "an authorized and scheduled inactive duty training period of not less than 4 hours duration." Weekend drills consist of multiple training assemblies which are described in said National Guard Bureau Pamphlet 350-1 as four or five unit training assemblies conducted on successive days. We conclude, therefore, that the weekend drill is not a 48-hour period of continuous service but is a series of consecutive unit training assemblies of not less than four hours duration conducted on successive days.
The working hours limitations set forth in Laws of 1911, Chapter 360, as last amended by Laws of 1970, Chapter 788 (§ 971 McKinney's Unconsolidated Laws), imposes limitations on certain municipal officials preventing them from assigning additional tours of duty to policemen. Such limitations do not affect the rights of individual members of a police force to utilize their personal time and was clearly intended to restrict the imposition of extra tours of duty upon such policemen by their employers under the stated conditions.
General Municipal Law, § 208-d (Laws of 1967, Chapter 812), places limitations upon police officers in cities with respect to their engaging in "extra work for another employer outside his regular hours of duty" as follows:
 "Notwithstanding the provisions of any general, special or local law or any rule or regulation of any police department or commissioner or head thereof, any member of a police force of a city may engage in extra work for another employer outside his regular hours of duty for not exceeding twenty hours a week provided that such extra work does not interfere or conflict with his regular duties as a member of the force or his availability for emergency duty nor affect his physical condition to the extent that it impairs his ability to efficiently perform such duties and further provided that the type of employment shall first be approved by the appropriate police department or police commissioner."
The above-quoted restrictions on outside employment of policemen have no application to the performance of military duty. Military service is not employment as contemplated by the aforesaid General Municipal Law restrictions. In Goldstein v. State ofNew York (256 App. Div. 141, 142), the Court stated, in pertinent part, as follows:
 "By article 11 of the Constitution of the State of New York, all able-bodied male citizens between the ages of eighteen and forty-five, residents of the State, constitute the militia. While under the Military Law service is by voluntary enlistment for which the militiaman receives stated pay provided by statute, members of the militia are clearly in a class different from the ordinary State employee. Doubtless the Legislature, if it saw fit, could provide for requiring military service by conscription or draft; such a contingency emphasizes the distinction between an employee and a member of the militia. The services of a member of the militia are rendered pursuant to an underlying duty which he constitutionally owes to support his government, either voluntarily or by compulsion if the Legislature so requires. The term `employment' on the contrary, in its essence, contemplates a contractual relation freely and voluntarily entered into by the employer and employee." (Emphasis added.)
Article 11 of the New York State Constitution, referenced inGoldstein above, was renumbered Article 12 and amended in 1938 and repealed November 6, 1962. The present provisions of the New York State Constitution which apply to the organized militia were adopted by the people on November 6, 1962 and are contained in Article 12, Section 1, as follows:
 "The defense and protection of the state and of the United States is an obligation of all persons within the state. The legislature shall provide for the discharge of this obligation and for the maintenance and regulation of an organized militia."
The statutory provisions constitute one of the terms of employment of every employee of the State or of a municipal subdivision thereof (Matter of Williams v. Walsh, 289 N.Y. 1,5 [1942]; see also: 1975 Informal Opinion of the Attorney General, dated July 21, 1975, rendered to the Village of Mohawk).
Accordingly, we conclude that an actual conflict between working hours and military training duty would have to exist before military leave under Section 242 of the Military Law would be authorized. Travel time to and from the place of performance of military duty would have to be included with the work time. It is also concluded that weekend training assemblies consist of four or more unit training assemblies, each constituting not less than a four-hour training period conducted on consecutive days, and finally, it is concluded that Laws of 1911, chapter 360, as amended (Section 971, Unconsolidated Laws) and Section 208-d of General Municipal Law (Laws of 1967, chapter 812) do not affect the performance of military duty by State and municipal employees.